■ In the Matter of DEBORAH I. and Another, Children Alleged to be Permanently Neglected. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; APRIL I., Appellant. [774 NYS2d 205]—

Lahtinen, J. Appeal from an order of the Family Court of Schenectady County (Powers, J.), entered May 13, 2003, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be permanently neglected, and terminated respondent's parental rights.

Respondent and her husband are the parents of Deborah (born in 1997) and Issac (born in 1998). An investigation by petitioner was prompted by a hotline report in January 2000 that $2^{1}/_{2}$-year-old Deborah was wandering on a street in the City of Schenectady, Schenectady County, unattended and clothed only in a diaper. A visit by a caseworker revealed unsanitary conditions, with dog feces on the floor and garbage

strewn about the apartment. The children had no beds and slept on the floor with the dogs. Efforts by petitioner to provide various family services resulted in no improvement. In July 2000, after one child was observed covered in dog feces and in light of the lack of any improvement in the living conditions, the children were removed from the home with the consent of the parents and placed in foster care. Respondent and her husband were given psychological evaluations by David Horenstein, a clinical psychologist, who determined that respondent was mildly mentally retarded and suffered from borderline personality disorder. Thereafter, respondent separated from her husband and he surrendered his parental rights and thus is not a party to this proceeding.

The children remained with the same foster family and respondent was permitted supervised visits. Petitioner attempted to assist respondent in improving her living circumstances and her parental skills with a goal of returning the children to her custody. After achieving little success and receiving sporadic cooperation, petitioner commenced this proceeding to terminate respondent's parental rights. Following a fact-finding hearing in March 2002, Family Court determined that respondent's mental retardation rendered her incapable of caring for the children and further found that the children were permanently neglected because respondent was unable to plan or care for them at that time or in the foreseeable future. The court subsequently held a dispositional hearing after which it terminated respondent's parental rights, permanently placed the children in petitioner's custody and authorized petitioner to consent to the children's adoption. The foster parents, who were the prospective adoptive parents, had no objection to continued visits by respondent and the court provided that quarterly visits with the children would be permitted. Respondent appeals.

Respondent initially contends that petitioner failed to satisfy its burden of proving mental retardation. "In order to terminate parental rights on the ground of mental retardation, the petitioning agency must demonstrate by clear and convincing evidence that the respondent is presently, and for the foreseeable future will be, unable to provide proper and adequate care for his or her children by reason of the respondent's mental retardation" (*Matter of Tiffany S.*, 302 AD2d 758, 759 [2003], *lv denied* 100 NY2d 503 [2003] [citations omitted]; *see Matter of William BB.*, 293 AD2d 791, 791 [2002]). Mental retardation is statutorily defined as "subaverage intellectual functioning which originates during the developmental period and is associated with impairment in adaptive behavior to such an extent

that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child as defined in the family court act" (Social Services Law § 384-b [6] [b]).

Evidence at the hearing regarding this issue included testimony and reports from Horenstein and John Myers, a psychiatrist who had evaluated respondent. Based upon an IQ test as well as his observations and interaction with respondent, Horenstein concluded that she was mildly mentally retarded. Myers agreed with this assessment. The evidence established that, while there was a slight chance of improving her personality disorder, there was no prospect for improvement of her mental capabilities. In the opinion of these experts, respondent's mental infirmity caused her to be unable to safely care for her children.

Respondent urges that Myers indicated in his assessment of her that she might have the ability in the future to provide safe care for her children. While Myers stated that an improvement in parenting skills was "possible" with professional help, he further stated that respondent would not be able to safely care for the children alone and would need 24-hour per day assistance. In light of the equivocal nature of this opinion and the fact that it was premised upon the availability of 24-hour assistance, we are unpersuaded by the argument that Myers' opinion conflicted with Horenstein's assessment that respondent could not safely care for the children in the future.

Respondent's additional argument that petitioner failed to establish that her mental retardation "originate[d] during the developmental period" (Social Services Law § 384-b [6] [b]) is belied by testimony of Horenstein relating that intellectual deficits were noted very early in her life and continued up to the time he evaluated her. Family Court's determination of mental retardation that rendered respondent unable to provide proper care for her children is supported by clear and convincing evidence in the record.

Since the determination of mental retardation is supported by the record, an extensive discussion of Family Court's further finding of permanent neglect is not necessary. After the children were initially removed, respondent missed visitation and failed to attend counseling and skill-building services provided by petitioner. While her involvement and desire to improve later increased, she made little progress in her ability to actually care for the children and there was no meaningful change in her ability to provide for their future. The record supports Family Court's finding of permanent neglect (*see Matter of Joseph ZZ.*, 245 AD2d 881, 883-884 [1997], *lv denied* 91 NY2d 810 [1998]).

The disposition of terminating parental rights and freeing the children for adoption was in their best interests. At the time of the dispositional hearing it was apparent that, while respondent's efforts had increased, she nevertheless continued to lack basic parenting skills and her impairments had not improved. The children had bonded with the foster family, with whom they had lived for over 2½ years, and the foster parents planned to adopt the children. Under such circumstances, Family Court's decision was in the children's best interests (see *Matter of Brandon OO.*, 304 AD2d 873, 874 [2003]).

Peters, J.P., Spain, Mugglin and Kane, JJ., concur. Ordered that the order is affirmed, without costs.