Matter of P.E.G. (2004 NY Slip Op 51611(U))

[*1]

Matter of P.E.G.

2004 NY Slip Op 51611(U)

Decided on December 13, 2004

Family Court, Nassau County

Lawrence, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 13, 2004

Family Court, Nassau County
In the Matter of the Commitment of Guardianship and Custody of P.E.G. (b. ), A Child under Eighteen Years of Age Alleged to be a Permanently Neglected Child and Alleged to be the Child of a Mentally Ill Parent. K.G., Mother, and J.H., Father, Respondents.
B-XXX

Richard S. Lawrence, J.
In a matter of apparent first impression, this Court must decide whether a prior finding of permanent neglect, based up mental illness, is determinative with respect to an after-born child, without the necessity of a hearing.
The Presentment Agency moves, pursuant to a motion for summary judgment, for an order adjudging an after-born child to be permanently neglected, upon the ground that the parents of the two older siblings of the after-born child have previously been adjudicated unable to provide proper and adequate care for them.
The Father cross moves for an order directing an updated forensic report, an updated Probation Report, and a dispositional hearing as the ability of the Father "to properly parent" his after-born son. The sole affirmation in support is that of the
Father's attorney, who argues that the Father is now subject to a completely new medication regimen from that which he was on at the time of the prior permanent neglect (hereafter "TPR") adjudication. Attached as a three page exhibit is an unsworn report, purportedly from the Father's treating facility, which the attorney stresses shows that the Father is "stable," that he "does not hear voices," and that his response to the new medication is "good." The attorney continues to discuss the Medical Dictionary's definition of the prior medications, alleges [*2]that previously he was "improp-erly medicated" at the time of this Court's TPR findings, and that the Father, since he is now stabilized, is entitled to a hearing. The Mother files solely her attorney's affirmation in oppo-sition, stressing that at the time of the prior determination, she was hospitalized at Pilgrim State Hospital, but at the present time, she is released and living at home; that this Court's prior TPR decision was so remote in time that she should be entitled to a new hearing regarding her after-born son, Paul G. (name has been changed for confidentiality purposes); that the Mother's mental
health has significantly changed since this Court's findings and that summary judgment, especially involving the termination of
parental rights of a child, is such a drastic measure that it should not be permitted.
The foster parents, who have been given leave to intervene in this proceeding, support the position of the Presentment Agency. They urge that the motion be granted, and in that event, the Court "in its discretion, dispense with a dispositional hearing," and "terminate the respondent parents' rights, transferring custody and guardianship to the Nassau County Department of Social Services for the purpose of adoption."
The Law Guardian supports the position of the Presentment Agency. He states the findings of only two years ago are not "stale" and were not made upon a "snapshot" of the parents' mental
condition, but rather upon a study of decades of medical records of each of the parents.
Lastly, the Presentment Agency files its reply affirmation. It calls the Court's attention to the fact that the sole supporting affirmations to each of the parents' papers upon this motion are solely those of the respective attorneys; that there is no sup-porting affidavit from any psychiatrist or any other expert; and
that the alleged medical record submitted by the Father is uncerti-fied and only a partial record. The reply further states that the Father's medical record itself, even though unsupported hearsay, states the Father's thought processes are "tangential," [*3]that his thought content is "paranoid," his attention is "hyper-vigilant," his insight is only "fair," and that he was in need of emergency room psychiatric intervention as recently as several months ago.
These parties have a long, arduous and torturous history before this Court.
On March 27, 1998, the two older children of the parties, Scott H. (name has been changed for confidentiality purposes) and Mark H.(name has been changed for confidentiality purposes), ages four years and two years respectively, were removed by Nassau County DSS and an application for return pursuant to FCA §1028 was filed by the parents. The Court tried that matter from April 24, 1998 through May 8, 1998, resulting in a denial of the application to return.
Thereafter, the fact finding hearing concerning the two older children was commenced on August 31, 1998 and did not conclude until May 7, 2001. The reason for the lengthy hearing was that
counsel for one of the parties had an extended illness, that the Mother had been committed to Pilgrim State Hospital for a long period of time and that the Father had been a voluntary resident at various times at the Northport VA Hospital, psychiatric unit.
During that time, a TPR petition regarding the two older children was filed by the Department. The Court suspended the fact finding neglect trial and proceeded directly to the TPR matter. By order dated January 23, 2002, this Court directed that William H. Kaplan, MD, submit to this Court his forensic evaluations as to each of the two parents in accordance with Social Services Law §384-b. This Court also allowed intervenor status to the foster parents. After various delays, due to among other things the fact that the Mother did not appear in Court after service, causing this Court to issue a warrant for her arrest, this Court commenced its TPR fact finding hearing pertaining to Scott H. and Mark H. on April 23, 2002. The Court rendered its decision from the bench on August 14, 2002, finding that each of the two older children were permanently neglected by each of the two respondent parents, due to the mental illness of each parent. The main witness for the Presentment Agency was Dr. William H. Kaplan, the forensic psychiatrist who testified over a period of four days.
[*4]
At that TPR hearing, Dr. Kaplan testified as follows: the Father has been suffering for at least 20 years from a schizophrenic disorder. He reviewed hospital records of the Father from the period 1980 through 2000, numbering 27 separate psychiatric hospitalizations. All of the records were from the Northport VA Hospital representing every single one of the Father's known psychiatric hospitalizations. This extensive number of admissions over twenty years means that the Father has a chronic and debilitating psychiatric illness and he cannot function outside a hospital for any extended period of time. This has seriously impaired his ability to function and he cannot ably care for the children. The Father has exhibited a chronic pattern; medication does not help to improve him and help him remain free of hospitalizations. He has difficulty staying in touch with reality and lacks ability to parent on a day to day basis. The children would be permanently neglected if they were returned to the Father. Dr. Kaplan continued that in between the VA admissions the Father is in a decompensating and psychotic state; his condition is
debilitating and progressive and he has an inability to stabilize himself outside of the hospital. His constant voluntary admissions into the hospital means that he "cannot function on the outside." On one occasion, the Father eloped from the hospital without per-mission, which shows poor judgment. Due to the severity of his mental history, the Father has all he can do to remain out of the hospital and take care of himself; he "cannot add to it the responsibility of two young sons." In addition, he "functions at a marginal level." If the Father were allowed custody of the children, he would be a danger to Mark H. as Mark H. was removed at the hospital and the Father never had a chance to parent him. Even though the Father is usually stabilized by medication immediately after being released from any particular hospital stay, these brief periods of non-psychosis do not remain. The Father is extremely passive, cannot hold employment and is apathetic. He is also "tremendously dependent upon the Mother," and on one occasion he witnessed the Mother throw Scott H. to the floor, as stated in a police report which Dr. Kaplan reviewed; the Father cannot provide protection to his children.
Regarding the Mother, Dr. Kaplan reviewed many reports from Pilgrim State Hospital, DSS, Education Assistance Corporation ("EAC") and numerous writings the Mother gratuitously sent to the Court which show a disconnection with reality and extreme schizophrenia. During that hearing, the Mother had been arrested on a criminal matter, was found not competent to proceed, and was a resident at Pilgrim State Psychiatric Hospital. All counsel agreed to continue the hearing in her absence. Before her hospi-talization, Dr. Kaplan attempted to interview and evaluate her, but she refused; he has not had any direct contact with her and has never met her.
Accordingly, this Court allowed Dr. Kaplan to testify in accordance with Social Services Law §384-b 6(e), which states that if a
 parent refuses to submit to [the] court-ordered
examination ... the psychiatrist, upon the basis of
other available information, including but not
limited to agency, hospital or clinic records, may
testify without an examination of such patient, pro-
vided that such other information affords a reason-
able basis for his opinion.
From a review of her records it is Dr. Kaplan's belief that she has a chronic and severe form of schizophrenia; she is not "in
good touch with reality;" she "cannot rear children;" her various treatments have not been successful because she has been non-compliant with medication; she is suspicious of those who help her and has classic paranoid thinking. Her psychiatric treatment started at age 14, and she is now 41 years of age. She has had "a
lifelong history of instability" and her progress is "very poor." Dr. Kaplan concluded that she is "chronically impaired" and "cannot function [on her own] for any period of time." She cannot be responsible for the care of children as she would put them in imminent danger.
Dr. Kaplan concluded as to each parent that, with a reasonable degree of psychiatric certainty, each of the two children, Scott H. and Mark H., would be at risk of permanent [*5]neglect if returned to the parents, and that each parent, presently and for the foresee-able future, would be unable, by reason of mental illness, to provide proper and adequate care for each of the children.
The Presentment Agency's next witness at that TPR hearing was the foster care worker from Nassau County DSS, who testified briefly. Thereafter the Father, J.H., testified briefly, including the fact that he and the Mother were married on November 1, 2001
and were expecting another (third) child.
At the conclusion of that TPR hearing, the Court found by clear and convincing evidence that each of the children, Scott H. and Mark H., were permanently neglected by reason of mental illness of each of the two parents.
In accordance with Social Services Law §384-b(4)c, the Court found that each Respondent parent was presently, and for the fore-
seeable future, unable by reason of mental illness, to provide proper and adequate care for the children who have been in the care of an authorized agency for the period of one year immediately prior to the date upon which the petition was filed; that the Respondents' two children were permanently neglected and that each parent had a mental illness of such magnitude that either one, or both, as of the date of that decision and for the foreseeable future, could not properly parent either child, or both children together; that should the children be returned to the Respondents, they would be at serious risk of being neglected due to the mental condition of the parents.
The third child, Paul G., was born to the parties on January 21, 2003, and a new neglect petition was immediately filed by the Presentment Agency. This child has been in foster care his entire life. At the time of the new neglect proceedings the Mother was a resident of Pilgrim State Psychiatric Center; a series of conferences were then held as to this third child. Among the petitions before the Court was one by the Presentment Agency requesting an order finding that reasonable efforts to [*6]reunify the child, Paul G., with his parents was not required pursuant to §352.2(6) of the Family Court Act. The Court noted in its written decision dated November 13, 2003 upon the motion that the Presentment Agency was relying upon a juvenile delinquency proceeding rather than the proper Article 10 matter. However, the Court sua sponte accepted the motion as one pursuant to the proper statute, which is FCA §1052(b)(A)(6).
 This Court's decision of November 13, 2003 continued that the Court found that diligent efforts were not required with respect to the child Paul G. born thereafter, and that Paul G. could not be returned safely to his home because of the mental illness of the parents "as such return would immediately expose that child to
neglect or worse." This Court further found that there is no statutory requirement that the Presentment Agency exercise any type of diligent effort in a case predicated upon mental illness. FCA §614; Social Services Law §384-b.4(c) and §384-b.7; and Matter of Juliana V., 249 AD2d 314 (2d Dept 1998);.
This third child, Paul G., as set forth above, was the subject of a neglect petition. The Presentment Agency moved by way of summary judgment for a finding of derivative neglect as to this after-born child based upon this Court's TPR findings as to the first two children. By decision and order of this Court dated November 13, 2003 (signed simultaneously with the aforementioned decision finding no diligent efforts to reunify were necessary), this Court granted summary judgment in favor of the Presentment Agency and against each Respondent, adjudicating the after-born child, Paul G., a neglected child with respect to each Respondent.
With respect to the instant motion for summary judgment requesting a TPR finding as to the after-born child, this Court's analysis is a follows:
In the leading case of Friends of Animals, Inc. v Associated Fur Manufacturers, Inc., 46 NY2d 1065, 1067 (1979), the general
rule of summary judgment was stated as follows:
To obtain summary judgment, it is necessary
that the movant establish his cause of action
[*7]
or defense "sufficiently to warrant the Court
as a matter of law in directing judgment" in
his favor (CPLR 3212, subd[b][sic] and he
must do so by tender of evidentiary proof in
admissible form.
As argued by the Respondent Mother, summary judgment is a drastic remedy "and should not be granted where there is any doubt as to the existence of a triable issue of fact....or where the factual issue is arguable or debatable." See International Customs Associates, Inc. v Bristol Meyers Squibb Co., 233 AD2d 161, 162
(1st Dept 1996).
The burden in a motion for summary judgment is upon the movant who is required to set forth a prima facie showing of its enti-tlement to summary judgment regardless of the sufficiency of the
opposing papers. If the movant fails to meet its burden, then the motion for summary judgment must be denied. Arma Textile Printers, Inc. v Spectrachem, Inc., 254 AD2d 382 (2d Dept 1998).
It is also well settled that, for summary judgment to be granted:
it must clearly appear that no material issue
of fact has been presented. Issue finding rather
than issue determination is the key. Since summary
judgment is the procedural equivalent of a trial,
any doubt as to the existence of a triable issue,
or where the material issue of fact is "arguable,"
requires denial of summary judgment. Salino v
IPT Trucking, Inc., 203 AD2d 352 (2d Dept 1994).
The affidavits submitted either in support or in opposition to the motion for summary judgment must be upon personal knowledge by a person having knowledge of the facts. See generally 97 NYJUR 2d SUMMARY JUDGMENT, §46; and Reitmeister v Reitmeister, 273 AD 652
(1st Dept 1948).
Once the movant has met its burden, then it is incumbent [*8]upon the party opposing the motion to produce evidentiary proof in
admissible form sufficient to establish material issues of fact which would warrant a trial. CPLR Rule 3212(b); and Alvarez v Prospect Hospital, 68 NY2d 320 (1986).
This Court is well aware that there is no rule regarding TPR matters which is similar to derivative neglect, as set forth in Family Court Act §1046(a)(ii), which provides:
proof of the abuse or neglect of one child shall
be admissible evidence on the issue of the abuse
or neglect of any other child of...Respondent.
However, this Court draws an analogy to that section, with respect to a TPR mental illness case, such is at bar and this Court holds that in such a case, the totality of the circumstances must be con-
sidered in order for this Court to rule as to whether an after-born child may be the subject of a TPR adjudication. Analogous neglect cases are Matter of T.C., 128 Misc 2d 156 (NY Fam. Ct. 1985); and Matter of Christina Maria C., 89 AD2d 855 (2d Dept 1982). Also important for the Court's determination is whether the actions of the Respondent were sufficiently proximate in time. Matter of Baby Girl S., 174 Misc 2d 682 (Fam. Ct., Bronx Cty., 1997); as well as whether the Respondent has submitted any evidentiary proof in
admissible form in opposition to the moving papers. Zuckerman v City of New York, 49 NY2d 557 (1980).
 In Zuckerman, the Court of Appeals reversed the Appellate Division and granted summary judgment to the Petitioner, where the
only paper submitted in opposition to the motion was the affirmation of the opposing attorney. The Court found that the opposing affirmation was without evidentiary value, and that "mere conclusions or expressions of hope or unsubstantiated allegations
are insufficient." Id. at 562. Furthermore, the establishment of neglect of the first child, which constitutes admissible proof [*9]of the neglect of the other children in accordance with Family Court Act §1046(a)(i), shifts the burden of proof to the Respondent to submit admissible evidence to create a triable issue regarding neglect of the other children; and Respondent's failure to submit such evidence allows the Court to grant summary judgment as to the other children. Matter of Suffolk County Department of Social Services o/b/o Michael V. v James M., 83 NY2d 178 (1994).
The instant Affirmation in Opposition by the Father's attorney contains only hearsay by the attorney. Glaringly lacking is any supporting affidavit from the Father or, perhaps more importantly,
from a psychiatrist. "[T]he submission of a hearsay affirmation by counsel alone does not satisfy" the requirement of opposing the motion. Zuckerman, supra at 560.
As to the Father's request for an updated forensic report, it has been held that this is within the Court's discretion, and should not be ordered unless it is really necessary. Thompson v Thompson, 267 AD2d 516 (3d Dept 1999). However, in view of the above analysis, this issue becomes moot.
Likewise, the instant Affirmation in Opposition by the Mother's attorney alleges that the Mother's situation has changed for the better, that this Court's prior TPR decision was so remote in time that the Mother should be entitled to a new hearing regarding the after-born child, and that the drastic remedy of granting summary judgment in a TPR situation should simply not be permitted.
Again, this Court must look to the analogous rules governing derivative neglect, in order to determine the issue presented by this TPR motion.
An additional rule governing this Court's decision, is set forth in the Matter of Duchess County Department of Social Services
o/b/o Douglas E. III v Douglas E., Jr., 191 AD2d 694 (2d Dept. 1993):
 the focus of the inquiry to determine whether
 derivative neglect is present is whether the evidence
 of abuse or neglect of one child indicates a fundamental
 defect in the parent's understanding of the duties
 of parenthood...Such broad notions of parental responsi-
 bility are generally reliable indicators that a parent
 who has abused one child will place his or her children
 at substantial risk of harm. 
[*10]
See also Nassau County DSS v B.B-M, NYLJ 2/16/99, p. 32, col. 6 (Family Ct., Nassau County, Lawrence, J.)
With respect to after-born children, derivative neglect may in fact be found, although not mandated, as to children born subsequent to the Court's finding of neglect with respect to children previously born to the Respondents. See DSS obo W.H. v R.H., The Attorney of Nassau County, January 2000, p. 15, col. 1, (Family Ct, Nassau County, Lawrence, J.).
One of the constant problems arising with cases such as this, is that of remoteness or timeliness, i.e., is the adjudicated
conduct sufficiently proximate in time to the conduct presently
complained of. This Court's research does not indicate any time limit, and it appears that a totality of the circumstances, on a case by case basis, is determinative. For instance, conduct more
than two years old, is not, in and of itself, proof of neglect. Matter of Daniel C., 47 AD2d 160 (1st Dept. 1975). However, Matter of Jeremy H., 193 AD2d 799 (2nd Dept. 1993) held that abuse in 1986
was sufficient to support a finding in a 1990 petition, especially where the Respondent had the burden of proving the contrary and had not done so.
In the case at bar, the after-born child was born just five months subsequent to this Court's decision terminating the parental
rights of each parent as to the child's two siblings.
In the instant matter, neither Respondent has submitted any affidavit by a person having personal or professional knowledge, putting into issue any of the salient allegations of the motion or anything else to indicate that the mental illness of either Respon-dent has changed since this Court's TPR findings and orders with respect to the two prior children.
Regarding a motion for summary judgment, the Court of Appeals itself has held that this an appropriate procedure in Article 10 proceedings, but that it may only be granted in a proceeding where it has been clearly ascertained that there is no triable issue of
fact outstanding. Matter of Suffolk County Department of Social [*11]Services o/b/o Michael V. v James M., supra.
As to after-born children, a motion for summary judgment is also proper and may result in a finding based upon such a motion,
without the necessity of a hearing. Matter of Tiffany A., 268 AD2d 818 (3d Dept 2000); Matter of Matthew Z., 279 AD2d 904 (3d Dept 2001); Matter of Marquisee EE, 257 AD2d 699 (3d Dept 1999); Matter of Baby Girl S., supra and Nassau County DSS v B.B-M., supra.
In the instant matter, this Court found, by Decision and Order dated August 14, 2002, after six days of trial, that each Respondent parent was unable, either at that time or in the foreseeable future, by reason of mental illness, to provide proper and adequate care and parenting of their two children, and that if those children were placed in or returned to the custody of either parent, the children would be in danger of becoming neglected as defined in the Family Court Act. Therefore, this Court granted a termination of parental rights as to each of those two children.
By decision dated November 13, 2003, upon the Presentment Agency's motion for summary judgment, requesting a derivative find-ing of neglect with respect to Paul G., the after-born child, this Court granted summary judgment in favor of the Presentment Agency and against each Respondent, adjudicating that after-born child a neglected child with respect to each Respondent.
Upon a permanent neglect finding based upon mental illness, there is no requirement that this Court hold a dispositional hearing. Matter of Harry K., 270 AD2d 928 (4th Dept 2000); Matter of Juliana V., supra; Matter of Winston Lloyd D., 7 AD3d 706 (2d Dept 2004); and Matter of Nina D., 6 AD3d 702 (2d Dept 2004).
A review of the opposing papers from each Respondent, indicates that they are totally without evidentiary value and, as the Court of Appeals has stated, "mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient." Zuckerman v City of New York, supra at 652.
This Court has previously found that each of the parent [*12]Respondents have suffered for decades from incurable mental illness
and that each of them has been decompensating without any hope of improvement. It has been held that the mere possibility of improvement is no defense whatsoever to a mental illness case. Matter of Jeran PP., 6 AD3d 994 (3d Dept 2004); Matter of Deborah I., 6 AD3d 771 (3d Dept 2004); and Matter of Eric X.J., 4 AD3d 528 (2d Dept 2004).
In an instructive case, the Family Court was affirmed when it terminated a father's rights based upon his mental illness. The psychiatrist had interviewed the father three years earlier and
reviewed his medical records, and stated that there was no evidence that the Father had undergone the substantial therapy that would have been needed to deal with his mental problems. In re
Guardianship of Katherine L., 8 AD3d 124 (1st Dept 2004); and see also Rashawn L.B., 8 AD3d 267 (2d Dept 2004).
The burden of proof upon the Presentment Agency with respect to a TPR hearing, "is clear and convincing proof." FCA §622; Matter of Heather Rose R., 301 AD2d 530 (2d Dept 2003). Once the Court has found for the Presentment Agency in a mental illness TPR case, there is no requirement on the part of the agency to attempt or exercise "diligent efforts" and there is no need for a dispositional hearing. In re Guardianship of Nereida S., 57 NY2d 636 (1982); and In re Joyce T., 65 NY2d 39 (1985). Accordingly, in the prior TPR case, this Court ordered an immediate termination of parental rights with respect to each of the two children and as to each of the Respondents.
The Court finds by clear and convincing evidence, that the Presentment Agency has sustained its burden of proof, that neither Respondent has submitted any legal defense whatsoever, in accordance with the applicable case law, to oppose the motion, and that the after-born child, Paul G., should be adjudicated permanently neglected in accordance with Social Services Law §384-
b.
[*13]
Any relief requested by any party, not specifically addressed in this decision, is denied.
Accordingly, it is hereby
ORDERED that the child, Paul G., is adjudicated permanently neglected as to each of the Respondent parents, a dispositional hearing is dispensed with, the parental rights of each of the Respondent parents are hereby terminated, and custody and guar-dianship of Paul G. is transferred, effective immediately, to the Nassau County Department of Social Services for the purpose of adoption.
This constitutes the Findings, Decision and Order of this Court.
Dated: Westbury, New York
 December 13, 2004