■ In the Matter of ANTHONY I., a Child Alleged to be Abandoned. ALBANY COUNTY DEPARTMENT FOR CHILDREN, YOUTH AND FAMILIES, Respondent; D'SHAWN I., Appellant. [877 NYS2d 520]—

Spain, J. Appeal from an order of the Family Court of Albany County (Maney, J.), entered July 11, 2008, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Anthony I. an abandoned child, and terminated respondent's parental rights.

In March 2008, petitioner commenced this proceeding to terminate respondent's parental rights to his son (born in 2007) who has been in petitioner's custody since his birth. At the time of the May 2008 fact-finding hearing, respondent had been incarcerated at the Albany County jail since August 2007. Fol-

lowing the hearing, Family Court sustained the petition, adjudged the child to be abandoned and terminated respondent's parental rights. Respondent now appeals and we affirm.

Family Court may terminate a parent's rights to his or her child if the petitioner establishes through clear and convincing evidence that the parent abandoned the child for six months prior to the filing of the termination petition (*see* Social Services Law § 384-b [4] [b]; [5] [a]; *Matter of Annette B.*, 4 NY3d 509, 513 [2005]; *Matter of Jacob WW.*, 56 AD3d 995, 997 [2008]; *Matter of Tiffany RR.*, 44 AD3d 1126, 1127 [2007], *lv denied* 9 NY3d 819 [2008]; *Matter of Cheyenne S.*, 20 AD3d 748, 748-749 [2005]). A parent is deemed to have abandoned a child if he or she "evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Services Law § 384-b [5] [a]; *see Matter of Isaiah F.*, 55 AD3d 1012, 1013 [2008], *lv denied* 11 NY3d 716 [2009]; *Matter of Pasquale U.*, 279 AD2d 906, 907 [2001]). Incarcerated parents have a responsibility to communicate with their children and, unless there is evidence to the contrary, they are "presumed able" to do so (*Matter of Annette B.*, 4 NY3d at 514; *see Matter of Nevaha J.*, 56 AD3d 989, 991 [2008], *lv denied* 11 NY3d 716 [2009]; *Matter of Alkreen J.*, 288 AD2d 785, 786 [2001]). A parent may rebut this presumption by showing "an inability to maintain contact or that petitioner discouraged or prevented [him or her] from doing so" (*Matter of Kerrianne AA.*, 1 AD3d 835, 836 [2003], *lv denied* 1 NY3d 507 [2004]).

At the fact-finding hearing, two witnesses testified for petitioner. Patricia Mantey, a supervisor for petitioner, testified that prior to his incarceration, respondent attended weekly visits with his son. After respondent was incarcerated, Mantey sent him two letters containing her contact information, but respondent never wrote or called her about the child or sent her anything for the child. Further, from the time he was first incarcerated until the time of the hearing, respondent had no contact with the child. Also called as a witness was John Gombel, a caseworker for the childcare agency that supervised visits between respondent and his son before respondent was incarcerated. Gombel testified that he sent respondent a letter informing him that he could have biweekly visits with the child during his incarceration, but that respondent never replied or contacted him about the child or sent him anything for the child, and that he never did anything to prevent or discourage respondent from visiting. This testimony satisfied petitioner's

burden of proving respondent's lack of contact and intent to forgo his parental rights, shifting the burden to respondent to demonstrate that he had maintained sufficient contact or that he was unable to maintain such contact or that petitioner impeded his doing so (*see Matter of Peter F.*, 281 AD2d 821, 823 [2001]). This respondent failed to do.

Respondent testified and admitted to receiving the letters, but claimed that he wrote letters to Mantey without receiving responses. He also testified that each time he received a letter, he attempted to phone Mantey and Gombel regarding contact and visitation with his son, but their phone numbers were "collect call restricted," so he could not get through because he could only make collect calls from the jail. By contrast, Mantey had testified that her telephone number was not collect call restricted and that, in the letters she sent to respondent, she informed him that he could call her collect. Family Court rationally found that petitioner and the childcare agency did not, contrary to respondent's assertions, prevent or discourage him from interacting with his son and that he had abandoned his child for the statutory six-month period from the time he was incarcerated in August 2007 until the time the termination application was filed in March 2008 (*see Matter of Annette B.*, 4 NY3d at 511; *Matter of Erika G.*, 289 AD2d 803, 804 [2001]). The conflicting testimony between the caseworkers and respondent raised credibility issues that Family Court was in the best position to assess, and its factual findings are entitled to considerable deference (*see Matter of Peter F.*, 281 AD2d at 824; *Matter of Russo v Russo*, 257 AD2d 926, 927 [1999]). Accordingly, we find that the record before us amply supports Family Court's determination.

Mercure, J.P., Kavanagh, Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.