◼ In the Matter of JACKIE B., a Child Alleged to be Abandoned. ALBANY COUNTY DEPARTMENT FOR CHILDREN, YOUTH AND FAMILIES, Respondent; DENNIS B., Appellant. [903 NYS2d 612]—

Peters, J. Appeal from an order of the Family Court of Albany County (M. Walsh, J.), entered August 25, 2009, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Jackie B. an abandoned child, and terminated respondent's parental rights.

Respondent's son was born in March 2007 and placed in foster care in May 2007, where he has remained. Petitioner commenced this proceeding in May 2009 seeking to terminate respondent's parental rights on the ground of abandonment. Following fact-finding and dispositional hearing, Family Court

found that respondent had abandoned the child and terminated his parental rights. Respondent appeals, and we affirm.

To warrant a finding of abandonment, petitioner must establish, by clear and convincing evidence, that during the six-month period immediately prior to the filing of the petition, the parent "evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Services Law § 384-b [5] [a]; see Matter of Michaela PP. [Derwood PP.], 72 AD3d 1430, 1430 [2010]; Matter of Anthony I., 61 AD3d 1320, 1321 [2009]; Matter of Peter F., 281 AD2d 821, 822-823 [2001]). A parent's ability to visit and/or communicate with his or her child is presumed (see Social Services Law § 384-b [5] [a]; Matter of Leala T., 55 AD3d 1007, 1008 [2008]), and once a failure to do so is established, the burden is upon the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency (see Matter of Kerrianne AA., 1 AD3d 835, 836 [2003], lv denied 1 NY3d 507 [2004]; Matter of Peter F., 281 AD2d at 823).

Here, testimony of petitioner's caseworker and a social worker from the foster care agency established that respondent did not contact petitioner or communicate with the child during the relevant period from November 2008 to May 2009, and that his last contact with the child occurred in August 2008. The caseworker also testified that she sent a letter to respondent in December 2008 outlining his responsibilities while the child was in foster care, including his responsibility to maintain contact with his son and plan for the child's future, but received no response from respondent.

Respondent, while conceding that his last contact with the child was in August 2008, testified that he was incarcerated from August 2008 to April 2009 and believed that he was prohibited from having any contact with his son while incarcerated. However, he provided no explanation for the basis of this belief (see Matter of Omar RR., 270 AD2d 588, 589-590 [2000]) and, in fact, acknowledged receiving the December 2008 letter advising him of his obligation to maintain contact with his son. In any event, his incarceration did not otherwise relieve him of the responsibility to communicate with petitioner (see Matter of Tiffany RR., 44 AD3d 1126, 1127 [2007], lv denied 9 NY3d 819 [2008]; Matter of Gabrielle HH., 306 AD2d 571, 573 [2003], affd 1 NY3d 549 [2003]; Matter of Precious Trenee O., 253 AD2d 701

[1998]; *see also Matter of Annette B.*, 4 NY3d 509, 513 [2005]).* Respondent testified that, after receiving the December 2008 letter, he attempted to call the caseworker one time but his collect call was rejected, and that he called the caseworker and foster agency numerous times upon his release from jail but his voice messages were not returned. By contrast, both the caseworker and social worker testified that it was the agency's policy to accept collect calls and they would have accepted a collect call from respondent had one been received. Further, respondent admitted to appearing in Family Court in December 2008 and May 2009 and that the caseworker was present at those times, but incredibly did not attempt to speak with her or otherwise mention his purported inability to contact her (*see Matter of Peter F.*, 281 AD2d at 823-824). The conflicting testimony of petitioner's witnesses and respondent presented credibility issues that Family Court rationally resolved against respondent, and those factual findings are entitled to considerable deference (*see Matter of Michaela PP.*, 72 AD3d at 1431; *Matter of Anthony I.*, 61 AD3d at 1322; *Matter of Peter F.*, 281 AD2d at 824). Therefore, notwithstanding respondent's testimony that he never subjectively intended to give up his parental rights (*see* Social Services Law § 384-b [5] [b]; *Matter of Julius P.*, 63 NY2d 477, 481 [1984]), the record amply supports Family Court's determination that respondent abandoned his son.

Finally, addressing Family Court's disposition, we find no basis upon which to disturb the determination to terminate respondent's parental rights. Following a finding of abandonment, Family Court's dispositional determination is governed by what is in the child's best interests (*see Matter of Gladys B. v Albany County Dept. of Social Servs.*, 274 AD2d 689, 690 [2000]; *Matter of Crystal C.*, 219 AD2d 601, 602 [1995]; *Matter of Anthony T.*, 208 AD2d 985, 986-987 [1994], *lv denied* 85 NY2d 801 [1995]; *see generally Matter of Bennett v Jeffreys*, 40 NY2d 543, 544 [1976]).

Respondent has a history of violent and assaultive behavior, which resulted in four periods of incarceration between 2003 and 2008, and he candidly acknowledged that "[he] do[esn't] follow the law." He also admitted that he failed to complete domestic violence counseling and dropped out of a substance abuse treatment program. Prior to his most recent incarceration, re-

---

* Although respondent claimed to have written a letter to the biological mother in early 2009 expressing his desire to see his son, he acknowledged his awareness that the mother did not have custody at that time (*see Matter of Nevaha J.*, 56 AD3d 989, 991 [2008], *lv denied* 11 NY3d 716 [2009]; *Matter of Alkreen J.*, 288 AD2d 785, 786 [2001]).

spondent sought custody of the child, but his petition was dismissed due to his failure to appear. Notably, despite being offered weekly visitation, he visited with the child only 13 times during a 14-month period. Although he requested visitation during the pendency of this proceeding, he missed the first scheduled visit. During the four supervised visits that respondent did attend after his release from jail, the caseworker from the foster care agency observed respondent's parenting skills to be limited and that the child had limited recognition of him. Additionally, respondent was found to be incapable of handling his own financial affairs and, notwithstanding the fact that he had previously criticized his mother's parenting ability to petitioner, respondent planned on continuing to live with her even if his parental rights were not terminated.

On the other hand, the evidence demonstrated that the foster parents are loving and devoted parents, one of whom put her career on hold to stay home with the child and assist in his development, and the child was progressing very well in their care. Moreover, the child has now resided and psychologically bonded with his foster family for nearly two years, and the foster parents are willing to adopt him. In view of the testimony adduced in this matter, Family Court properly determined that it was in the child's best interests that respondent's parental rights be terminated and the child be freed for adoption (*see Matter of Deborah I.*, 6 AD3d 771, 774 [2004]; *Matter of Crystal C.*, 219 AD2d at 602; *see also Matter of Alijah XX.*, 19 AD3d 770, 772 [2005]).

Mercure, J.P., Spain, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is affirmed, without costs.