Matter of Kayson R. (Christina S.) (2018 NY Slip Op 07991)





Matter of Kayson R. (Christina S.)


2018 NY Slip Op 07991


Decided on November 21, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2018

525659

[*1]In the Matter of KAYSON R., Alleged to be an Abandoned Child. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CHRISTINA S., Appellant.

Calendar Date: October 17, 2018

Before: Garry, P.J., McCarthy, Lynch, Aarons and Rumsey, JJ.


Lisa K. Miller, McGraw, for appellant.
Thomas P. Coulson, Broome County Department of Social Services, Binghamton, for respondent.
Palmer J. Pelella, Owego, attorney for the child.



MEMORANDUM AND ORDER
Garry, P.J.
Appeals from two orders of the Family Court of Broome County (Connerton, J.), entered October 28, 2016 and August 25, 2017, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be abandoned, and terminated respondent's parental rights.
The subject child was removed from respondent's care on the day after his birth in August 2015. He was placed with a cousin of his father in October 2015, by order upon consent, and respondent was provided supervised visitation [FN1]. The cousin supervised the visits until early November 2015, when petitioner's caseworker agreed to do so instead. A permanency order entered in March 2016 noted that respondent had not visited the child since October 2015. In April 2016, respondent filed a visitation petition — dismissed later that month [*2]upon respondent's failure to appear — asserting that she had not seen the child in seven months. On May 3, 2016, petitioner commenced this abandonment proceeding. Family Court conducted a hearing, adjudicated the child to be abandoned within the meaning of Social Services Law § 384-b (5) (a) and scheduled a dispositional hearing. Following that hearing, the court terminated respondent's parental rights. Respondent appeals.[FN2]
Petitioner satisfied its initial burden by proving by clear and convincing evidence that respondent did not visit or communicate with the child, and had no regular or meaningful communication with petitioner about his welfare, during the six months immediately prior to the commencement of the abandonment proceeding, although she was "able to do so and not prevented or discouraged from doing so by . . . petitioner" (Matter of Alec B., 34 AD3d 1110, 1110-1111 [2006]; accord Matter of Erving BB. [Lynette EE.], 111 AD3d 1102, 1103 [2013]; see Social Services Law § 384-b [5] [a]). "A parent's ability to visit and/or communicate with his or her child is presumed, and once a failure to do so is established, the burden is upon the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency" (Matter of Jackie B. [Dennis B.], 75 AD3d 692, 693 [2010] [citations omitted]; accord Matter of Gabriella I. [Jessica J.], 79 AD3d 1317, 1318 [2010], lv denied 16 NY3d 704 [2011]).
Petitioner's caseworker testified that respondent did not visit or communicate with the child and did not contact the cousin who was caring for him during the six months before the petition was filed [FN3]. The caseworker advised respondent in early November 2015 to contact her to arrange visits with the child. However, respondent refused to schedule visits with the caseworker, stating that she did not want them to take place at petitioner's facility. She made no requests for visits between November 2015 and March 2016. Although she occasionally spoke with the caseworker during this period for other purposes, such as requesting bus passes, she never asked about the child's welfare. She failed to attend a service plan review meeting in January 2016, and did not keep petitioner informed of address changes. A visit was scheduled in March 2016, at respondent's request, but did not occur because respondent did not comply with a requirement to confirm the visit [FN4]. The visit was rescheduled to take place in April 2016 at the same time as a visit with respondent's two older children, who were in the care of a different family. Respondent confirmed and appeared for this visit with the two older children. The subject child was not present, as he was traveling out of state with the cousin's family. The caseworker testified that she did not know when she scheduled the visit that the child would not be there. She asked respondent to contact her to schedule a makeup visit, but respondent did not [*3]do so, and did not visit or communicate with the child before the six-month period elapsed in May 2016.
Respondent gave a different account, testifying that she attempted to contact the caseworker on multiple occasions throughout the six-month period to request visits and ask about the child's welfare, but that the caseworker either failed to return her calls or made promises to arrange visits that the caseworker did not keep. Respondent did not provide telephone records to support these claims, nor did she identify specific dates for any of the alleged calls. She asserted that she did not know that she was required to confirm the March 2016 visit, and she denied that the caseworker told her to reschedule the April 2016 visit, stating instead that she asked the caseworker to schedule a visit and the caseworker did not respond.
Family Court resolved the credibility issues created by this conflicting testimony in petitioner's favor. This Court accords "considerable deference" to such determinations (Matter of Jackie B. [Dennis B.], 75 AD3d at 694; see Matter of Peter F., 281 AD2d 821, 824 [2001]). Respondent failed to follow through on the visitation proceeding that she had commenced during the six-month period, and even if the child had been present for the April 2016 visit, it is well established that such "sporadic, infrequent and insubstantial contact[]" does not defeat a showing of abandonment (Matter of Colby II. [Chalmers JJ.], 140 AD3d 1484, 1485 [2016]; see Matter of Ryan Q. [Eric Q.], 90 AD3d 1263, 1264 [2011], lv denied 18 NY3d 809 [2012]). The record thus fully supports Family Court's conclusion that respondent abandoned the child (see Matter of Dustin JJ. [Clyde KK.], 114 AD3d 1050, 1050-1051 [2014], lv denied 23 NY3d 901 [2014]; Matter of Michaela PP. [Derwood PP.], 72 AD3d 1430, 1430-1431 [2010], lv denied 15 NY3d 705 [2010]).
We likewise find support in the record for the termination of respondent's parental rights [FN5]. Petitioner's proof established that, after the abandonment hearing, biweekly supervised visits were scheduled for respondent and the child, to take place at a Broome County facility at the same time as respondent's visits with the two older children and a newborn who had been removed from her care immediately after his birth in July 2016. Eighteen visits were scheduled between May 2016 and February 2017; respondent attended nine, missed part of three due to tardiness, and failed to attend six visits. The caseworker who supervised the visits (hereinafter the supervisor) testified that respondent would "[t]ypically" confirm ahead of time that she planned to attend, but would call a few minutes before the scheduled time to say that she could not come because of transportation problems or that, for unexplained reasons, she was leaving late. She said that respondent failed to appear for "at least three or four" of the six missed visits without calling to cancel.
The supervisor testified that respondent made efforts to build a bond with the child during her first few visits with him. However, after the birth of the fourth child in July 2016, respondent focused primarily on this newborn and stopped paying attention to the other children [FN6]. Although respondent sometimes held the child or played with him, they interacted less and less frequently as time passed. During the most recent few visits, the child attempted [*4]several times to leave the room and respondent did nothing to stop him. The supervisor testified that respondent expressed no concern over the child's lack of interaction with her and did not ask for assistance in engaging with him.
Petitioner's witnesses further testified that respondent had failed to comply with several conditions of the October 2015 order. In approximately May 2016, respondent moved from Broome County to Chenango County in violation of a residence requirement. Thereafter, petitioner was unable to provide respondent with certain services because its contracts were with Broome County providers. Respondent lost her Medicaid coverage due to the move and was unable to obtain Medicaid in Chenango County, either — as petitioner's witnesses testified — because she failed to apply for it, or — as respondent testified — because of unexplained administrative delays. Respondent completed required parenting courses, had negative drug screens throughout the pertinent time period and had stable employment in a sandwich shop. However, she failed to complete required substance abuse and mental health evaluations, in part because she did not have Medicaid coverage. She did not participate in domestic violence counseling or anger management classes. She was required to maintain clean, sanitary and stable housing, but refused to permit caseworkers to enter her Chenango County residence, asserting that it belonged to her mother, who had not consented [FN7]. The residence was described as a trailer in which at least three adults and six children were living. Respondent eventually moved to another residence in Chenango County that was located even farther away from Broome County. She failed to attend a planning conference for the child in January 2017 [FN8]. A caseworker testified that respondent was involved in several altercations during this period, and once appeared with a black eye after a fight with a neighbor.
Respondent acknowledged that she had difficulty engaging with the child because he was not bonded with her after the long period in which they had no contact. She described visits after the fourth child's birth as "rough" because of the difficulty of managing several children at once. Respondent offered explanations for her missed visits and tardiness and for her failures to comply with the conditions of the October 2015 order. Family Court found, however, that respondent's transportation difficulties and problems in obtaining services were largely caused by her decision to relocate to Chenango County in violation of the order. The testimony established that the child was doing well in his preadoptive placement with the cousin, who had been caring for him for almost all of his life, and had frequent contact with his siblings. This evidence, as well as respondent's failure to evince a commitment to the child by developing a bond with him and complying with the conditions for his return as she had previously agreed, provide a sound and substantial basis for Family Court's determination that it was in the child's best interests to terminate respondent's parental rights (see Matter of Jackie B. [Dennis B.], 75 AD3d at 694-695; Matter of Kayla KK. [Tracy LL.], 68 AD3d 1207, 1208-1209 [2009], lv denied 14 NY3d 707 [2010]). This determination was also supported by the attorney for the child, both in Family Court and upon this appeal.
McCarthy, Lynch, Aarons and Rumsey, JJ., concur.
ORDERED that the appeal from the order entered October 28, 2016 is dismissed, without costs.
ORDERED that the order entered August 25, 2017 is affirmed, without costs.



Footnotes

Footnote 1: The father surrendered his parental rights in May 2016.

Footnote 2: Respondent's appeal from the fact-finding order must be dismissed (see Family Ct Act § 1112 [a]; Matter of Isaiah OO., [Benjamin PP.], 149 AD3d 1188, 1189 n [2017], lv denied 29 NY3d 913 [2017]), but the "appeal from the dispositional order brings up for review the determinations made in the fact-finding order" (id.).

Footnote 3: The cousin confirmed that she did not receive any calls, letters or other communications from respondent after November 3, 2015, when the cousin refused to supervise further visits because she did not want to be involved with "drama" between petitioner and the child's father.

Footnote 4: The caseworker testified that respondent had previously been informed in writing of this requirement.

Footnote 5: Family Court was not statutorily required to conduct a dispositional hearing (see Matter of Chantelle TT., 281 AD2d 660, 662 [2001]; Matter of Alex MM., 260 AD2d 675, 676 [1999]), but elected to do so as an exercise of discretion.

Footnote 6: The oldest child stopped attending visits after the infant's birth. 

Footnote 7: There was evidence that emergency medical personnel who were called to this residence while respondent was living there had difficulty getting inside because the home was blocked by clutter.

Footnote 8: Respondent did attend a subsequent meeting in August 2017.