In the Matter of BEVERLY EE., a Child Alleged to be Abandoned. CORTLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; RYAN FF., Appellant. [931 NYS2d 269]—

Garry, J.

---

The child who is the subject of this proceeding (born in 2007) was conceived while respondent was in a sexual relationship with the mother. The child was placed in foster care immediately after she was born and, in February 2009, the mother's parental rights were terminated. In May 2009, petitioner commenced a proceeding asserting that respondent was the child's father. Paternity was confirmed by DNA testing, and Family Court issued an order of filiation in November 2009. In January 2010, petitioner commenced this proceeding seeking a determination of abandonment (*see* Social Services Law § 384-b [4] [b]; [5] [a]). After a hearing, Family Court declared the child to be abandoned and terminated respondent's parental rights. Respondent appeals.

To demonstrate that respondent abandoned the child, petitioner was required to establish by clear and convincing evidence that he "evince[d] an intent to forego his . . . parental rights and obligations" by failing to visit or communicate with the child or petitioner during the six-month period before the petition was filed (Social Services Law § 384-b [5] [a]; *see* Social Services Law § 384 [4] [b]; *Matter of Stephen UU. [Stephen VV.]*, 81 AD3d 1127, 1128 [2011], *lv denied* 17 NY3d 702 [2011]; *Matter of Kaitlyn E. [Lyndsay E.]*, 75 AD3d 695, 696 [2010]). Petitioner met this burden by demonstrating that respondent had never visited or communicated with the child, who was two years and four months old when the proceeding was commenced. Respondent made no attempt to refute this showing, but contended that his failure should be excused because he was prevented from knowing that he was the child's father by the mother, who allegedly "defrauded" him by telling him that another man had fathered the child. We reject this claim. The testimony of a caseworker confirmed that the mother did initially indicate that either another man or respondent was the father; the other man was ultimately excluded by DNA testing. However, this alone does not constitute " 'active concealment' " sufficient to excuse respondent's complete failure to assert his parental interest in a timely manner (*Matter of John Paul B. v Dominica B.*, 77 AD3d 932, 934 [2010], quoting *Matter of Jarrett*, 224 AD2d 1029, 1032 [1996], *lv dismissed* 88 NY2d 960 [1996]). Respondent knew of the pregnancy and had sufficient reason to believe that he might be the father to have, as he conceded, "quite a few conversations with [the mother]" on the subject. Nonetheless, he failed to take action of any sort to assert or determine paternity, including registering as the putative father, requesting DNA testing, visiting the child, or paying support. Further, regardless of what respondent may have believed during the pregnancy or shortly after the birth, he

thereafter had good reason to suspect that he was the child's father, both before and during the statutory six-month period preceding commencement of the abandonment proceeding. Petitioner commenced the paternity proceeding alleging that he was the child's father in May 2009. The subsequent DNA test was positive. Respondent appeared at the hearing in November 2009, and knew then that he was the father. During this entire period, despite knowing that petitioner believed he was the child's father, and even after it was determined that he was, respondent did not attempt to contact the child nor inquire as to her welfare (cf. Matter of Robert O. v Russell K., 80 NY2d 254, 264 [1992]; Matter of Cassidy YY., 22 AD3d 931, 931-932 [2005]).* Thus, respondent did not meet his burden to refute petitioner's showing of lack of contact during the dispositive period by demonstrating that he had contacted the child, was unable to do so, or was discouraged or prevented from doing so by petitioner (see Social Services Law § 384-b [5] [a]; Matter of Anthony I., 61 AD3d 1320, 1321-1322 [2009]). Family Court properly determined that he abandoned the child.

Respondent's contention that Family Court improperly advocated for petitioner during the hearing by objecting to a question posed by respondent's counsel is both unpreserved (see Matter of Keaghn Y. [Heaven Z.], 84 AD3d 1478, 1479-1480 [2011]) and wholly without merit. The transcript reveals that the claimed impropriety did not occur, but that the court was in fact ruling upon a pending objection, and that everyone, including respondent's counsel, understood that.

Finally, Family Court properly denied respondent's request for a continuance to call an additional witness. Whether to grant or deny such a request "rest[s] within the sound discretion of the trial court" (Matter of Steven B., 6 NY3d 888, 889 [2006] [internal quotation marks and citation omitted]), and an adjournment should be allowed only upon a showing of good cause (see Matter of Elias QQ. [Stephanie QQ.], 72 AD3d 1165, 1166 [2010]). Respondent's counsel told the court that he wished to obtain the mother's testimony to support the claim that she had told respondent that another man was the child's father, but he failed to demonstrate due diligence by subpoenaing her to testify (see Matter of Steven B., 6 NY3d at 889). Further, as respondent's assertion that he was misled by the mother did not constitute a defense to the claim of abandonment, an

---

* At the dispositional hearing, respondent alleged that he had made telephone calls to petitioner several months after the petition was filed, but further testified that the calls were made to inquire about the proceedings, rather than the child.

adjournment would not have altered the result. Respondent's fundamental rights were not, as he claims, affected by the denial (*compare Matter of Eileen R. [Carmine S.]*, 79 AD3d 1482, 1484-1486 [2010]).

Mercure, J.P., Peters, Stein and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.