◼ In the Matter of RYAN Q., a Child Alleged to be Abandoned. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES. Respondent; ERIC Q., Appellant. [935 NYS2d 179]—

Stein, J.

Respondent was incarcerated when his son was born in 2006 and until his release on parole in September 2008. While respondent was incarcerated, his son was in the care of his sister and brother-in-law because the parental rights of the child's mother were terminated when the child was 10 weeks old. Respondent was reincarcerated in July 2009 when he violated his parole and remains incarcerated. Petitioner commenced this proceeding in December 2009, claiming that respondent had abandoned his son for the six-month period from June 22, 2009 to December 22, 2009. After holding a fact-finding hearing, Family Court adjudicated the child to be abandoned and terminated respondent's parental rights. Respondent now appeals and we affirm.

A finding that a child is abandoned may be made, and parental rights may be terminated, when, during the six-month period immediately preceding the filing of the petition, the "parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so

and not prevented or discouraged from doing so by the agency" (Social Services Law § 384-b [5] [a]; *see Matter of Gabriella I. [Jessica J.]*, 79 AD3d 1317, 1318 [2010], *lv denied* 16 NY3d 704 [2011]). A parent's ability to maintain contact with his or her child is presumed—including a parent who is incarcerated (*see* Social Services Law § 384-b [2] [b]; *Matter of Gabriella I. [Jessica J.]*, 79 AD3d at 1318).

Petitioner bears the initial burden of proving abandonment by clear and convincing evidence (*see Matter of Ryan I. [Laurie U.]*, 82 AD3d 1524, 1525 [2011]; *Matter of Alexa L. [Nilza L.]*, 79 AD3d 1290, 1291 [2010]). Here, petitioner established through the testimony of one of petitioner's caseworkers and respondent's brother-in-law that respondent had three one-hour supervised visits with the child during the relevant six-month period. The caseworker further testified that respondent sent only one letter to petitioner during that period. Respondent's brother-in-law testified that respondent's only contacts with the child during the relevant six-month period, aside from the foregoing visits, consisted of one birthday card and one voice mail message. Such sporadic and insubstantial contacts were insufficient to preclude a finding of abandonment and the burden, therefore, shifted to respondent to demonstrate that he was unable to maintain contact with the child or, if able, was prevented or discouraged from doing so by petitioner (*see Matter of Yvonne N.*, 16 AD3d 789, 790 [2005]).

Respondent testified that, in addition to his three visits with the child during the relevant time frame, he sent weekly letters to his sister and brother-in-law. However, those letters were not produced and respondent's sister disputed both the number of letters and their content, denying that they concerned the child. Family Court clearly found the sister's testimony to be more credible. Similarly, the testimony of the child's mother established that respondent sent her only one letter, at most, concerning the child. In addition, respondent's attempts to place telephone calls to petitioner and to his sister and brother-in-law within a short period following his reincarceration were disingenuous at best, as he was well aware that neither would accept collect calls and that he had not established a prepaid plan (*see Matter of Alkreen J.*, 288 AD2d 785, 786 [2001]).

Although respondent's sister and brother-in-law acknowledged receiving several other written communications from respondent, it was unclear whether they were received within the relevant six-month period. Moreover, their testimony regarding such communications established that respondent was not prevented by his incarceration from requesting visits and/or

communicating with the child through the appropriate parties, but failed to do so. In fact, respondent produced no credible evidence that he ever sought information with regard to the child's progress or well-being or otherwise demonstrated a meaningful effort to assume his parental obligations (*see Matter of Gabriella I. [Jessica J.]*, 79 AD3d at 1318), and his subjective intent is insufficient to preclude a finding of abandonment (*see Matter of Jackie B. [Dennis B.]*, 75 AD3d 692, 694 [2010]). Morever, petitioner had no obligation to establish that it made diligent attempts to strengthen the relationship between respondent and the child (*see Matter of William B.*, 47 AD3d 983, 985-986 [2008], *lv denied* 11 NY3d 702 [2008]).

In our view, there is ample support in the record for Family Court's determination that respondent was able to communicate with the child and with petitioner and was not prevented or discouraged from doing so by petitioner. According great deference to Family Court's ability to make credibility determinations and assess the demeanor of the witnesses (*see Matter of Jackie B. [Dennis B.]*, 75 AD3d at 694; *Matter of Joshua BB.*, 27 AD3d 867, 869 [2006]), we find no basis to disturb its determination that respondent failed to demonstrate that he maintained sufficient contact with the child to defeat a finding of abandonment (*see Matter of Ryan I. [Laurie U.]*, 82 AD3d at 1525).

Respondent's remaining contentions have been considered and are unavailing.

Mercure, A.P.J., Peters, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is affirmed, without costs.