■ In the Matter of MARIA E., a Child Alleged to be Abandoned. RENSSELAER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JERMAINE D., Appellant. [943 NYS2d 249]—

Spain, J. Appeal from an order of the Family Court of Rensselaer County (Cholakis, J.), entered April 6, 2011, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Maria E. to be an abandoned child, and terminated respondent's parental rights.

Shortly after her birth in September 2008, Maria E. was removed from the care of her mother, who had serious mental health problems, and placed in petitioner's custody; she has since lived in the same foster home. Within one month, the mother identified respondent as the father, although he was not listed on Maria's birth certificate. Respondent was aware of the possibility of his paternity as early as November 2009, but never petitioned for paternity. After petitioner's paternity application, DNA tests confirmed respondent's paternity in June 2010, and an order of filiation was entered. Despite persistent efforts for almost two years by caseworkers to contact respondent, who was in and out of prison, respondent never contacted the caseworkers or responded to their letters, failed at any point to inquire about Maria's health or welfare or to provide contact information to the caseworkers after his many address changes, and never visited with or attempted to contact or communicate with Maria.

Petitioner commenced this proceeding in September 2010, shortly after the mother's parental rights were terminated, seeking to terminate respondent's parental rights on the ground of abandonment. After a hearing at which respondent—although present with counsel—chose not to testify, Family Court determined that respondent had abandoned Maria and terminated his parental rights, freeing her for adoption by her foster parents. Respondent now appeals, and we affirm.

A finding that a child has been abandoned may be made and parental rights terminated when the petitioner proves, by clear

and convincing evidence, that during the six-month period immediately preceding the filing of the termination petition, the "parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Service Law § 384-b [5] [a]; *see Matter of Ryan Q. [Eric Q.]*, 90 AD3d 1263, 1263-1264 [2011], *lv denied* 18 NY3d 809 [2012]). "A parent's ability to maintain contact with his or her child is presumed—including a parent who is incarcerated" (*Matter of Ryan Q. [Eric Q.]*, 90 AD3d at 1264, citing Social Service Law § 384-b [2] [b] and *Matter of Gabriella I. [Jessica J.]*, 79 AD3d 1317, 1318 [2010], *lv denied* 16 NY3d 704 [2011]).

During the relevant time period,* March 20, 2010 to September 20, 2010, numerous letters were sent by the assigned caseworker, and respondent's paternity was confirmed, yet he made no efforts to communicate with Maria or petitioner and failed to provide updated contact information for himself while incarcerated or upon his transfers or releases. While petitioner was under no obligation to exercise diligent efforts to encourage respondent to establish a relationship with his child (*see Matter of Devin XX.*, 20 AD3d 639, 640 [2005]), the record reflects that between October 2008 and the September 2010 filing of this petition, the caseworkers repeatedly searched the inmate database, welfare management records and the putative father registry in an effort to locate respondent; they sent him approximately 17 letters at various addresses, most of which were not returned, to advise him of his rights and obligations and urging him to contact them regarding Maria. Respondent never replied and initiated no contact with the caseworkers. On an unannounced visit to the mother's home as early as November 2009, caseworkers met respondent, who confirmed he had received some of the letters and was aware of his possible paternity and the court proceedings.

When the caseworkers visited respondent in August 2010 at the local jail—their only contact with him during the statutory period—he was informed that the mother's rights had recently been terminated, but he made no inquiry regarding Maria, by then almost two years old and whom he had never met. He confirmed receipt of their letters and indicated that he did not reply because he did not believe he was the father. Respondent

---

* We reject respondent's claim that the statutory period could not run until he was adjudicated the child's father (*see Matter of William B.*, 47 AD3d 983, 985 [2008], *lv denied* 11 NY3d 702 [2008]).

provided an address for his mother in the Bronx, indicating that she could take custody of Maria while he would reside in the City of Albany upon his release, but letters to the grandmother were returned. Respondent did not follow up on this until after the petition was filed, and did not contact caseworkers to request visitation, arrange for his mother to contact the caseworkers, or provide his new location after he was transferred to state prison to serve a 3 to 6-year sentence. Neither this tenuous referral to his mother nor his belated fleeting request for jailhouse visitation with Maria, which petitioner then opposed (subsequently obtaining a court order prohibiting visitation at a distant prison as against Maria's best interests), are sufficient to defeat a finding of abandonment (*see Matter of Ryan Q. [Eric Q.]*, 90 AD3d at 1264; *Matter of Gabriella I. [Jessica J.]*, 79 AD3d at 1318; *Matter of Michaela PP. [Derwood PP.]*, 72 AD3d 1430, 1430 [2010], *lv denied* 15 NY3d 705 [2010]; *Matter of Devin XX.*, 20 AD3d at 640; *Matter of Jovantay U.*, 298 AD2d 641, 642 [2002]).

Petitioner convincingly established respondent's failure to communicate with Maria or petitioner or to visit her in the almost two years of her life, evincing his intent to forgo his parental role and shifting the burden to respondent "to prove an inability to maintain contact or that he . . . was prevented or discouraged from doing so by the petitioning agency" (*Matter of Jackie B. [Dennis B.]*, 75 AD3d 692, 693 [2010]; *see Matter of Gabriella I. [Jessica J.]*, 79 AD3d at 1318). Respondent submitted no such proof, and his failure to testify permitted Family Court "to draw the strongest inference that the opposing evidence permits against [him]" (*Matter of Jacob WW.*, 56 AD3d 995, 997 [2008]). The record amply supports the court's finding—in open court—that there was "no evidence of any effort on his part whatsoever."

With regard to Family Court's disposition, we discern no basis upon which to disturb its determination (*see Matter of Jackie B. [Dennis B.]*, 75 AD3d at 694). Given the evidence that respondent has never met the child, for which he alone bears responsibility, and that the child is happy and thriving in the home of her foster parents who are ready and willing to adopt her, we agree that termination of respondent's parental rights is in her best interests, freeing her for adoption.

Rose, J.P., Malone Jr., Kavanagh and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.