OPINION OF THE COURT
Dandrea L. Ruhlmann, J.
Petitioner, the Monroe County Department of Human Services, by petition filed September 3, 2013 seeks to terminate the parental rights of Nadir B., respondent father, to his sons Xavier (date of birth x/xx/xxxx) and Amir (date of birth x/xx/xxxx), alleging that he abandoned the boys. To terminate father’s parental rights on the grounds of abandonment, petitioner must establish by clear and convincing evidence that father evinced an intent to forgo his parental rights and obligations by failing to visit or communicate with petitioner or his sons between March 3, 2013 and September 3, 2013 (the six months immediately prior to the filing of this petition) (see Matter of Jeremiah Kwimea T., 10 AD3d 691, 692 [2d Dept 2004]). If proved, father’s burden is to refute petitioner’s potential showing of lack of contact during the dispositive period by demonstrating that he had contacted the children, was unable to do, or was discouraged or prevented from doing so by petitioner (Matter of Beverly EE. [Ryan FF.], 88 AD3d 1086 [3d Dept 2011]). Petitioner did not prove that father’s intent was to forgo his parental rights.
On July 9, 2014, the court heard testimony from four witnesses: caseworkers Denise S. and Amy J. and foster parent Karen B.H.; and Tamara B., paternal grandmother, testified on behalf of father. The court also took judicial notice of its prior orders under docket numbers NN-13044-11 and NN-13045-11, which adjudged that the boys were neglected by their mother Erica H. The court issued its oral decision on August 14, 2014 and counsel requested that it be reduced to the written decision herein.
Xavier and Amir were removed from mother’s care on or around November 3, 2011 and placed in foster care. On or around January 25, 2012, mother made an admission to neglecting Amir and Xavier. Paternal grandmother Tamara B., a resident of Maryland, filed for custody of Xavier and Amir on December 10, 2012. At her first few telephonic appearances in court between January and March, she discussed that father *956 was aware of the petition; that father was living with her and attending school; and that she had the older three siblings of Amir and Xavier in her care for approximately four years. Petitioner was present in the courtroom on these occasions and assured the court that it would submit an interstate compact application in order for paternal grandmother to be considered a resource for Xavier and Amir. Father himself appeared telephonically in court on April 16, 2013 and May 16, 2013— within the abandonment time frame—and indicated that he supported paternal grandmother’s petition for custody. It was not until June 3, 2014 that—after receiving positive results of a genetic marker test that father submitted to in Maryland— Nadir B. was adjudged to be the legal and biological father of Amir and Xavier.
Although father did not appear at the termination hearing on July 9, 2014 and the court takes a negative inference therefrom (Matter of Jacob WW., 56 AD3d 995 [3d Dept 2008]), the court notes that paternal grandmother Tamara B. did testify on behalf of her son. She testified that she has five grandchildren; two that have been proved by DNA, Xavier and Amir. She testified that she understands that her custody petition is still pending. She admitted that she received petitioner’s letters for her son in July and August 2013 and received petitioner’s telephone messages for her son on August 7 and 8, 2013. While she understands that the court is seeking termination of Erica H. and/or Nadir B.’s parental rights, she emphasized that she has been in constant contact with Monroe County Department of Human Services and with kinship social workers and services in Maryland. She said caseworker S. advised her to take classes and she completed foster parent training in September 2013. She testified most credibly that “I have been dealing with this for years.”
Denise S., Monroe County Department of Human Services former case manager from December 16, 2012 until September 13, 2013, testified that she actually filed the interstate compact application on April 11, 2013. Denise S. admitted that paternal grandmother had participated in the service plan reviews for Amir and Xavier and it was clear all along that she did not want the boys to remain in foster care and she had the boys’ three siblings in her care. (Most recently, the court learned that the interstate compact had been approved at or around the time that paternity was established.)
Caseworker S. testified that within the relevant time period she attempted to contact father by leaving telephone messages *957 with paternal grandmother. Although caseworker S. admitted that the majority of her communication with grandmother pertained to grandmother obtaining custody of Amir and Xavier’s siblings residing in her home—and grandmother’s desire to become certified as a foster home for Amir and Xavier—she also informed grandmother that she needed to speak with father. Despite these calls, father never contacted her.
Caseworker S. and foster mother Karen B.H. testified that from March 3, 2013 until September 3, 2013, father made no contact with children or foster home nor did he offer gifts or financial support to the boys. Although Ms. S. testified that petitioner did not prevent father from contacting the boys, she testified that the Department’s efforts to contact father were limited to two letters to father dated August 1, 2013 (petitioner’s exhibit 1) and July 5, 2013 (petitioner’s exhibit 2) that were mailed to paternal grandmother’s address. The first paragraphs of both letters reiterate that paternal grandmother is seeking custody of father’s three children currently in her care. The second paragraphs indicate that since Amir and Xavier had already been in care for 18 out of the prior 22 months, that petitioner “is going forward with the termination of [his] parental rights.” The letter dated July 5, 2013 (exhibit 2) never states anything about contacting the boys but gives the caseworker’s telephone “if [father] has any questions.” The letter. dated August 1, 2013 (exhibit 1) also gives only the caseworker’s number if there are any questions “or [would] like to discuss planning for Xavier & Amir.”
Karen B.H. testified that she is employed at Hillside at Halpren and has been the foster parent of Xavier and Amir since October 31, 2011. She has three biological children (Michael, 19; Mark, 17; and Julianne, 11) and has a foster child, Aliyah H., who is the half sister of Amir and Xavier. She testified that during the pertinent period, March 3, 2013 through September 3, 2013, she had no contact with father and she wishes to adopt Xavier and Amir. She testified that her basis of knowledge of biological father is from court only on or about June 2014. She said she was never concerned before about the identity of the boys’ father because father never contacted her or the boys.
The issue presented herein is whether having a viable resource petition for custody is enough to prove that father did not “ evince [ ] an intent to forego his . . . parental rights and obligations” (Social Services Law § 384-b [5] [a]) because he believed his mother would ultimately gain custody of his *958 children. Of course, the subjective intent of father, whether expressed or otherwise, unsupported by evidence of either visitation and communication with the child or agency, shall not preclude a finding of abandonment (Social Services Law § 384-b [5] [b]).
During the requisite time period, father appeared in court twice, indicating he supported his mother’s custody petition. A genetic marker test proved respondent to be the father of the boys both enabling the interstate compact to be completed and allowing his mother to proceed with her wish to be designated a foster parent for the boys—and ultimately their custodian by the custody petition she filed.
In Matter of Madeline R. (117 Misc 2d 14 [Fam Ct, NY County 1982]), the court found that one letter from respondent mother to the agency which requested that the caseworker apprise her of the children’s well-being and requested that the children be placed in the care of maternal grandmother constituted a communication with the agency so as to preclude a finding of abandonment. There, the agency had repeatedly refused the requests of respondent mother and maternal grandmother to place the children in the care and custody of grandmother. Similarly, and relying in part on Matter of Madeline R., Monroe County Family Court opined that evidence that the respondent mother left her children with their grandmother for several months while maintaining little telephone contact was insufficient to support a neglect finding based on the theory of abandonment (Matter of Marlon S., 131 Misc 2d 248 [Fam Ct, Monroe County 1986]).
To the contrary, petitioner cites and relies on Matter of Jacob WW. (56 AD3d 995 [3d Dept 2008]). Therein the Court held that respondent mother’s contact with the caseworker during two court appearances and with the children at three family events that were arranged by maternal grandmother was not enough to preclude a finding of abandonment. “It has long been held that sporadic or unsubstantial contact is insufficient, particularly where the contact was initiated by a third party rather than the parent” (id. at 997). The difference and distinguishing factor in Matter of Jacob, however, is that maternal grandmother therein was never a viable resource for the children and both petitioner and the foster parents therein made efforts to facilitate visitation. Here, paternal grandmother has always been a viable resource (the fact that petitioner did not move faster to follow up on the interstate compact application is not father’s *959 fault), already has three of the boys’ siblings in her care and petitioner’s two letters do not offer visitation as an option to father but rather inform him only that petitioner would be seeking termination of his rights (see Matter of Male M., 210 AD2d 136 [1st Dept 1994] [fact that maternal grandmother might have been an adequate alternate resource under other circumstances does not preclude a finding of abandonment]; Matter of Jasmine J., 43 AD3d 1444 [4th Dept 2007] [fiancée was offered but was not a viable resource]; Matter of Michael W., 191 AD2d 287 [1st Dept 1993] [potential placement with sister]; Matter of Cheyenne S., 20 AD3d 748 [3d Dept 2005] [respondent father’s alleged attempts to get his brother to apply for custody of the children did not constitute communication between father and either children or social services agency]). Similarly in Matter of Desmond Sinclair G. (202 AD2d 156 [1st Dept 1994]), the Court indicated that mother in fact abandoned her child because although she believed the grandmother would be able to care for the infant, she was aware that the grandmother was in fact not a viable resource (see also Matter of Noah V.P. [Gino P.], 96 AD3d 1472 [4th Dept 2012] [where the caseworker not only encouraged respondent father to file a paternity petition but also met with the father twice a month, kept the father updated regarding the child and invited the father to all service plan reviews]).
Further, while petitioner argues that father never established paternity until this year, the neglect petition against mother filed in November 2011 itself identifies respondent as putative father and acknowledges that paternal grandmother (and father) have custody of three of the boys’ siblings in Maryland (see e.g. Matter of Paige WW. [Charles XX.], 71 AD3d 1200 [3d Dept 2010]). Petitioner did not act on its admitted knowledge that respondent was the father and that his mother—paternal grandmother—was a viable resource since removal.
Now, therefore, it is hereby ordered that the petition is dismissed.