Matter of Joshua M. (Brittany N.) (2018 NY Slip Op 08722)





Matter of Joshua M. (Brittany N.)


2018 NY Slip Op 08722


Decided on December 20, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 20, 2018

525644

[*1]In the Matter of JOSHUA M. and Another, Alleged to be Abandoned Children. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; BRITTANY N., Appellant.

Calendar Date: November 19, 2018

Before: McCarthy, J.P., Egan Jr., Lynch, Devine and Clark, JJ.


Erin K. Hayner, Saratoga Springs, for appellant.
Alexis M. Osborne, Schenectady County Department of Social Services, Schenectady, for respondent.
Alexandra G. Verrigni, Rexford, attorney for the children.



MEMORANDUM AND ORDER
Clark, J.
Appeal from an order of the Family Court of Schenectady County (Burke, J.), entered March 27, 2017, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be abandoned, and terminated respondent's parental rights.
Respondent's children, Joshua M. and Zamariah M. (born in 2010 and 2011, respectively), have been in petitioner's care since March 2015, when they were removed from the care of their father due to allegations that they were malnourished and, thus, failing to thrive. At the time that the children came into petitioner's care, respondent's whereabouts were unknown, but respondent eventually contacted petitioner in late April 2015. The children, however, remained in petitioner's care and, in December 2015, they were placed in a preadoptive home. Thereafter, in February 2017, petitioner commenced this proceeding to terminate respondent's parental rights on the ground of abandonment. After a hearing, Family Court adjudged that respondent had abandoned the children and terminated her parental rights [FN1]. Respondent now appeals.
We affirm. To warrant a termination of parental rights on the ground of abandonment, the petitioning agency bears the burden of establishing by clear and convincing evidence that, during the six months preceding the petition's filing, the parent "evince[d] an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child[ren] and communicate with the child[ren] or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Services Law § 384-b [5] [a]; see Matter of Mason H. [Joseph H.], 31 NY3d 1109, 1110 [2018]; Matter of Michaela PP. [Derwood PP.], 72 AD3d 1430, 1430 [2010], lv denied 15 NY3d 705 [2010]). "A parent's ability to visit and/or communicate with his or her child is presumed, and once a failure to do so is established, the burden is upon the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency" (Matter of Jackie B. [Dennis B.], 75 AD3d 692, 693 [2010] [citations omitted]; see Social Services Law § 384-b [5] [a]; Matter of Jamal B. [Johnny B.], 95 AD3d 1614, 1615 [2012], lv denied 19 NY3d 812 [2012]).
Testimony from petitioner's caseworker and a case planner at St. Catherine's Center for Children — the organization responsible for, among other things, supervising respondent's parenting time with the children — established that respondent saw the children only twice during the relevant six-month period for a total of about two hours. The testimonial and documentary evidence demonstrated that respondent became upset during both of these visits after hearing the children refer to their foster mother as "mommy" and, as a result, made inappropriate comments to the children during the first visit and engaged in a verbal argument with the foster mother at the second visit. The evidence revealed that respondent either failed to attend, or confirm that she would be in attendance at, the remainder of her scheduled parenting time and that, on at least one occasion, the children waited for respondent, but she never showed up.
Although Family Court suspended respondent's parenting time with the children in October 2016, such suspension was a result of respondent's ongoing refusal to complete a court-ordered mental health evaluation and to comply with the court's repeated directives to sign releases "needed for a full psychological evaluation." In suspending respondent's parenting time, Family Court made clear to respondent and her attorney that the suspension would be lifted once respondent completed the court-ordered mental health evaluation and signed the required releases. Under the circumstances, Family Court's requirements were "reasonable precondition[s]" to respondent's reinstatement of parenting time with the children (Matter of Alec B., 34 AD3d 1110, 1111 [2006]; accord Matter of Carter A. [Jason A.], 111 AD3d 1181, 1183 [2013], lv denied 22 NY3d 862 [2014]), and the suspension of respondent's parenting time during the relevant six-month period does not preclude a finding of abandonment, particularly since the reinstatement of respondent's parenting time was entirely within her control (see Matter of Andrea A., 12 AD3d 991, 992 [2004], lv denied 4 NY3d 705 [2005]). Respondent, however, did not sign the required releases or attend the appointments necessary to complete her mental health evaluation.
Furthermore, the evidence established that, during the relevant time frame, respondent did not call the children, although provided with the foster mother's phone number and designated times at which she could do so, or send the children any letters, cards or pictures. Nor did the mother attend or participate by phone in the children's September 2016 service plan review. Moreover, although the record reveals that respondent communicated with petitioner and the case planner at St. Catherine's Center for Children roughly a dozen times over the six-month period, the majority of those communications pertained to the scheduling of visits or the court-ordered mental health evaluation. The evidence demonstrated that respondent sought updates on the children only a few times, and she did not make any meaningful attempts to stay apprised of the children's health and well-being by attending or inquiring about their doctor's appointments or their progress and educational development at their new schools. In all, respondent's contact with the children and the relevant agencies was sporadic, infrequent and insubstantial and, thus, was insufficient to defeat petitioner's showing of abandonment (see Matter of Dustin JJ. [Clyde KK.], 114 AD3d 1050, 1051 [2014], lv denied 23 NY3d 901 [2014]; Matter of Jamal B. [Johnny B.], 95 AD3d at 1615-1616; Matter of Michaela PP. [Derwood PP.], 72 AD3d at 1430).
Respondent did not testify or present any evidence to controvert petitioner's proof or otherwise satisfy her burden of demonstrating that she was unable to maintain contact with the children or prevented or discouraged from doing so (see Matter of Maria E. [Jermaine D.], 94 AD3d 1357, 1359 [2012]; Matter of Calvin Raheem Q., 287 AD2d 274, 274 [2001]). Accordingly, we find no basis upon which to disturb Family Court's determination.
McCarthy, J.P., Egan Jr., Lynch and Devine, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Petitioner also commenced an abandonment proceeding against the father, who ultimately consented to an order finding that he had abandoned the children within the meaning of Social Services Law § 384-b and terminating his parental rights.