Matter of Damien D. (Ronald D.) (2019 NY Slip Op 07654)





Matter of Damien D. (Ronald D.)


2019 NY Slip Op 07654


Decided on October 24, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 24, 2019

526753

[*1]In the Matter of Damien D. and Others, Alleged to be Abandoned Children. Broome County Department of Social Services, Respondent; Ronald D., Appellant.

Calendar Date: September 12, 2019

Before: Garry, P.J., Clark, Mulvey and Pritzker, JJ.


O'Connor & O'Connor, Binghamton (Donald J. O'Connor Jr. of counsel), for appellant.
Broome County Department of Social Services, Binghamton (Kuredin Eytina of counsel), for respondent.
Feyi Gaji, Binghamton, attorney for the children.



Clark, J.
Appeal from an order of the Family Court of Broome County (Young, J.), entered April 4, 2018, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be abandoned, and terminated respondent's parental rights.
In October 2016, while respondent was housed in a secure drug treatment facility, petitioner commenced this abandonment proceeding seeking to terminate respondent's parental rights to his three children (born in 2009, 2011 and 2012), who had been in foster care with their paternal great aunt for roughly two years. Following a fact-finding hearing, Family Court granted petitioner's application and terminated respondent's parental rights. Respondent appeals.
A finding of abandonment may be made and parental rights terminated when, during the six months preceding the filing of the petition, the "parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child[ren] and communicate with the child[ren] or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Services Law § 384-b [5] [a]; see Matter of Isaiah OO. [Benjamin PP.], 149 AD3d 1188, 1189 [2017], lv denied 29 NY3d 913 [2017]). A parent, even an incarcerated one, is presumed to be able to maintain contact with his or her children (see Matter of Isaiah OO. [Benjamin PP.], 149 AD3d at 1189; Matter of Dustin JJ. [Clyde KK.], 114 AD3d 1050, 1050 [2014], lv denied 23 NY3d 901 [2014]; Matter of Ryan Q. [Eric Q.], 90 AD3d 1263, 1264 [2011], lv denied 18 NY3d 809 [2012]). Once a failure to maintain contact is established by clear and convincing evidence, the burden shifts to "the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency" (Matter of Jackie B. [Dennis B.], 75 AD3d 692, 693 [2010]; see Matter of Dustin JJ. [Clyde KK.], 114 AD3d at 1050).
The testimony presented by petitioner established that, during the relevant six-month period (May 1, 2016 through October 31, 2016), respondent visited with the children during a birthday party on May 1, 2016, spoke with at least one of the children by telephone in June 2016 and sent a letter to the foster parents sometime in October 2016. Although respondent was incarcerated for most of the six-month period, the evidence revealed that he did not actively pursue visits with the children during his incarceration or send them any cards, letters or gifts. The evidence additionally demonstrated that, aside from the one-minute phone call in June 2016, respondent did not call the children or the foster parents. Further, petitioner's caseworker, as well as the family specialists assigned to the case by Berkshire Farm Center and Services for Youth, testified that respondent did not contact them at all during the relevant six months. The foregoing proof constituted clear and convincing evidence that respondent failed to maintain contact with the children and/or petitioner during the statutory period (see Matter of Isaiah OO. [Benjamin PP.], 149 AD3d at 1190; Matter of Dustin JJ. [Clyde KK.], 114 AD3d at 1051). The minimal contact between respondent and the children during the relevant six months was too infrequent, sporadic and insubstantial to defeat petitioner's showing of abandonment (see Matter of Colby II. [Chalmers JJ.], 140 AD3d 1484, 1485 [2016]; Matter of Ryan Q. [Eric Q.], 90 AD3d at 1264).
For his part, respondent failed to demonstrate that his incarceration made contact with his children or petitioner infeasible or that he was otherwise discouraged or prevented from maintaining sufficient contact with the children (see Matter of Dustin JJ. [Clyde KK.], 114 AD3d at 1051; Matter of Arianna SS., 275 AD2d 498, 499 [2000]; Matter of Shannon QQ., 262 AD2d 679, 680 [1999]). Respondent testified that he could not call the children because the foster parents did not have money on an account to accept his calls. However, respondent conceded that he did not contact petitioner or the foster parents to ask that money be put on an account or to otherwise seek assistance with facilitating phone calls between him and the children. By respondent's own testimony, his efforts to arrange phone calls with the children were limited to once asking the paternal grandmother to speak with the foster father about it. Additionally, although respondent stated that he had difficulty reading and writing, the evidence revealed that respondent had been able to successfully compose a substantial letter to the foster parents with the assistance of facility staff. Respondent did not offer any persuasive explanation as to why he could not have similarly composed letters or cards to the children during the six-month period.
Finally, respondent claimed that the family specialists discouraged contact with the children by raising the possibility of judicially surrendering his parental rights. Although the family specialists acknowledged that they discussed this possibility with respondent during a service plan review in May 2016, they testified that the permanency plan at that time was return to parent, that they discussed all potential options with respondent and that they had discussed the possibility of a judicial surrender because of the length of time that the children had been in foster care and respondent's incarceration. Under these circumstances, "petitioner cannot be faulted for attempting to pursue a permanency plan that would afford the child[ren] some measure of stability" (Matter of Isaiah OO. [Benjamin PP.], 149 AD3d at 1191). As respondent failed to rebut petitioner's showing of abandonment, there is no basis upon which to disturb Family Court's order (see Matter of Isaiah OO. [Benjamin PP.], 149 AD3d at 1191; Matter of Colby II. [Chalmers JJ.], 140 AD3d at 1485-1486; Matter of Dustin JJ. [Clyde KK.], 114 AD3d at 1051).
Garry, P.J., Mulvey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.