Matter of Dreyson HH. (Michael GG.) (2025 NY Slip Op 06578)

Matter of Dreyson HH. (Michael GG.)

2025 NY Slip Op 06578

Decided on November 26, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 26, 2025

CV-24-1790
[*1]In the Matter of Dreyson HH., Alleged to be an Abandoned Child. Essex County Department of Social Services, Respondent; Michael GG., Appellant.

Calendar Date:October 9, 2025

Before:Garry, P.J., Clark, Aarons, Lynch and Powers, JJ.

Cynthia Feathers, Saratoga Springs, for appellant.
Essex County Department of Social Services, Elizabethtown (Michele A. Bowen of counsel), for respondent.
Timothy J. Lawliss, Peru, attorney for the child.

Lynch, J.
Appeal from an order of the Family Court of Essex County (Richard Meyer, J.), entered September 25, 2024, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be abandoned, and terminated respondent's parental rights.
Respondent (hereinafter the father) is the father of the subject child (born in 2023). The father was not identified on the child's birth certificate, but the child's mother told petitioner's caseworker that he was the father. Shortly after the child's birth, petitioner notified the father that the child had been placed in foster care following the filing of a neglect petition against the mother.[FN1] The father had one visit with the child, supervised by petitioner, in February 2023. Paternity proceedings were commenced against the father in March 2023, but he failed to appear for testing. Paternity was eventually confirmed in April 2024, and, on July 31, 2024, an order of filiation was entered. On that same day, petitioner filed a petition to terminate the father's parental rights based upon abandonment. Following a fact-finding hearing, Family Court determined that the father had abandoned the child and terminated his parental rights. The father appeals.
Initially, we agree with the attorney for the child that there was no requirement for the order of filiation to be in place for six months before the father's parental rights could be terminated. A petition to terminate parental rights based on abandonment may be brought against "any person adjudicated by a court of this state . . . to be the father of the child prior to the filing" of said petition (Domestic Relations Law § 111 [1] [e] [i] [emphasis added]; see Social Services Law § 384-b [4]; Matter of Maria E., [Jermaine D.],94 AD3d 1357, 1358 [3d Dept 2012] [order of filiation filed in or around June 2010; abandonment petition filed in September 2010]; Matter of Beverly EE. [Ryan FF.],88 AD3d 1086, 1087 [3d Dept 2011] [order of filiation filed in November 2009; abandonment petition filed in January 2010]).[FN2] Here, neither party disputes that the order of filiation was filed and entered prior to the termination petition, albeit on the same day. We also note that a paternity proceeding was commenced in March 2023, but the father failed to appear for testing on multiple occasions [FN3] and only submitted to a DNA test in April 2024, after being arrested and remanded to jail for failure to comply with prior testing orders. Thus, the father's argument that he did not have sufficient reason to believe he was the father until the paternity test result appears to be a problem of his own making. In any case, the father never denied paternity; in fact, he told petitioner's caseworker that he was "100% sure" he was the father of the child. While he later testified that he "wasn't 100% sure," he promptly contradicted that testimony, stating that he was certain he was the father after his one and only visit with the child [*2]in February 2023. Under these circumstances, we are satisfied that the abandonment petition was properly brought against the father (see Domestic Relations Law § 111 [1] [e] [i]; Matter of Beverly EE. [Ryan FF.],88 AD3d at 1087).
"A finding of abandonment is warranted when it is established by clear and convincing evidence that, during the six-month period immediately prior to the date of the filing of the petition, a [respondent] evinces an intent to for[go] his or her parental rights as manifested by his or her failure to visit or communicate with the child or the petitioner, although able to do so and not prevented or discouraged from doing so by that petitioner" (Matter of Ciara FF. [Robert FF.],235 AD3d 1162, 1163 [3d Dept 2025] [internal quotation marks, brackets and citations omitted]; see Matter of Jayce G. [Daniel H.],229 AD3d 857, 858 [3d Dept 2024]). "If the petitioning agency satisfies its burden of proving that the respondent failed to maintain sufficient contact for the statutory period, the burden shifts to the [respondent] to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency" (Matter of Quannie T. [Miayjah R.],226 AD3d 1119, 1121 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 912 [2024]). The petitioning agency "is under no obligation to exercise diligent efforts to encourage a parent [or putative parent] to establish a relationship with his or her child" (Matter of Ciara FF. [Robert FF.],235 AD3d at 1163 [internal quotation marks and citations omitted]; see Matter of Kamariana SS. [Anthony SS.],227 AD3d 1166, 1167 [3d Dept 2024], lv denied 42 NY3d 903 [2024]).
It is undisputed that the father did not visit, communicate with or send gifts to the child during the relevant six-month period — January 31, 2024 through July 31, 2024. It is further uncontested that the father did not contact petitioner or the foster care agency to inquire about the child during the relevant period. Accordingly, we readily conclude that petitioner met its burden of proving that the father failed to maintain sufficient contact with the child (see Matter of Jayce G. [Daniel H.],229 AD3d at 858; Matter of Joseph D. [Joseph PP.],193 AD3d 1290, 1291-1292 [3d Dept 2021]; Matter of Alexa L. [Nilza L.], 79 AD3d 1290, 1291 [3d Dept 2010]). Therefore, the burden "shifted to the father to demonstrate that he was unable to maintain contact with the child or, if able, was prevented or discouraged from doing so" (Matter of Jayce G. [Daniel H.],229 AD3d at 858-859 [internal quotation marks, brackets and citations omitted]).
The father testified that the foster care agency would not allow him to visit the child absent proof of paternity. However, the program coordinator for the foster care agency testified that, while the agency would not reach out to the father to schedule visitation without proof of paternity, it would not prevent visitation if the [*3]father reached out to the agency and petitioner approved. Even if the father erroneously believed that a paternity test was required to visit the child, it is telling that he made no efforts to facilitate that test (see Matter of Dennym K.J. [Ronnie O.],215 AD3d 1254, 1255-1256 [4th Dept 2023]; compare Matter of Darrell J.D.J. [Kenneth R.],156 AD3d 788, 789-790 [2d Dept 2017]). Further, the foster care agency was under no obligation to reach out to the father (see Matter of Ciara FF. [Robert FF.],235 AD3d at 1164; Matter of Tiyani AA. [Yani Z.],232 AD3d 1147, 1150 [3d Dept 2024]; Matter of Lamar LL. [Loreal MM.],86 AD3d 680, 681 [3d Dept 2011], lv denied 17 NY3d 712 [2011]), and the record reflects that the father was given contact information for both petitioner and the foster care agency. Additionally, petitioner's caseworker testified that she spoke with the father on a few occasions at court appearances involving the mother and even offered him visits with the child, which the father evidently declined. Thus, any claim that petitioner prevented or discouraged the father from contacting the child is plainly belied by the record (see Matter of Derick L. [Michael L.], 166 AD3d 1325, 1328 [3d Dept 2018], lv denied 32 NY3d 915 [2019]; Matter of Lily LL. [Eric MM.],88 AD3d 1121, 1123 [3d Dept 2011]).
Insofar as the father contends that his autism and substance abuse issues prevented him from maintaining contact with the child, we find these arguments unavailing. The father testified that he is "slightly autistic" and has learning disabilities but offered no medical proof of such conditions, let alone that they impacted his ability to maintain a relationship with the child (see Matter of David UU. [Jeanie UU.],206 AD3d 1502, 1505 [3d Dept 2022]; Matter of Leala T.,55 AD3d 1007, 1008 [3d Dept 2008]; Matter of Alexander V.,179 AD2d 913, 915 [3d Dept 1992]). As to the father's substance abuse issues, he testified that he was using drugs from December 2023 until April 2024, but had since been "clean and sober." If true, this would mean the father had ample time and opportunity to contact petitioner or the child during the period of April 2024 through July 2024. Notably, the father tested positive for high levels of cocaine in June 2024. In any case, the father offered no evidence that his substance abuse issues "permeated his life" to such an extent that contact was not feasible (Matter of Bradyen ZZ. [Robert A.], 216 AD3d 1229, 1231 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 905 [2023]; see Matter of Madelynn T. [Rebecca M.],148 AD3d 1784, 1786 [4th Dept 2017]). In view of the foregoing, there is clear and convincing evidence that the father failed to maintain sufficient contact with petitioner or the child, although able to do so, and we discern no basis upon which to disturb Family Court's determination to terminate the father's parental rights to the child on the ground of abandonment (see Matter of [*4]Jayce G. [Daniel H.],229 AD3d at 858-859; Matter of Emma K. [Wendy I.-Matthew K.],132 AD3d 1111, 1112 [3d Dept 2015]).
Garry, P.J., Clark, Aarons and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The mother's parental rights were terminated in June 2024 by reason of abandonment.
Footnote 2: The attorney for the child also suggests that there was no statutory requirement to adjudicate the father's paternity prior to filing a termination petition against him (see Matter of Shalena Lee C.,197 AD2d 404, 404 [1st Dept 1993] [petitioner proved abandonment when "respondent never established paternity, although advised to do so on several occasions, and gave no indication that he was prepared to accept the responsibility of providing for the child"]; see also Matter of Ursula J.,169 Misc 2d 148, 153 [Fam Ct, Ulster County 1996] [termination proceeding based on permanent neglect was proper, even when commenced prior to the issuance of an order of filiation]). However, these cases were decided under a prior version of the statute (see Domestic Relations Law § 111 [1] [former (e)]). Under the presently effective statute, an abandonment proceeding may only be brought against a person adjudicated by a court to be the child's legal parent, subject to certain exceptions not applicable here (see L 2022, ch 828 § 1 [eff Dec. 30, 2022]).
Footnote 3: The father claimed that he failed to appear for paternity testing due to transportation issues. Even accepting this explanation as true, it is notable that the father did not make any attempts to reschedule the testing at a time and place that was convenient for him (see Matter of Dennym K.J. [Ronnie O.],215 AD3d 1254, 1255-1256 [4th Dept 2023]).